UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:09-0091 |
| ) | Judge Sharp |
| SUSAN HOUSTON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is the Motion for Summary Judgment (Docket No. 15) filed by the United States of America ("the Government"), and the response thereto (Docket No. 18) filed by the Defendant Susan Houston ("Ms. Houston"). For the following reasons, the Court will grant the Government's Motion insofar as it seeks to recover the $125,000.00 paid to Ms. Houston pursuant to Part E of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA") on the theories of conversion, payment by mistake of fact, and/or unjust enrichment. The Court will deny the Motion insofar as the Government seeks to recover those monies, as well as trebled damages and civil penalties, under the False Claims Act ("FCA").

### I. FACTUAL BACKGROUND

For the most part, the relevant facts are undisputed. Those facts, which will be expanded upon where necessary for purposes of the legal discussion, are as follows:

In the 1940's, Jesse Cheadle was employed at the Oak Ridge Gaseous Diffusion Plant. He developed metatastic squamous cell cancer, and died in 1980.

In July 2001, Thelma Cheadle ("Mrs. Cheadle"), as surviving spouse, filed a claim for benefits under the EEOICPA. The claim was granted and she was awarded $150,000 in benefits in

1

June 2002.

On May 2, 2005, Mrs. Cheadle filed a claim for widow's benefits under Part "E" of the EEOICPA. In a "Notice of Recommended Decision" from the District Office of the United States Department of Labor ("DOL") dated August 12, 2005, Mrs. Cheadle was informed that a Supervisory Claims Examiner was recommending that her claim be "accepted as compensable under Part E," and that she be "awarded the basic survivor benefit of $125,000.00." (Docket No. 16-2 at 3). Ms. Houston, the daughter of Mrs. Cheadle, was sent a copy of the Recommended Decision because she had previously been identified as holding a Power of Attorney in relation to her mother's affairs.

In the Recommended Decision, Mrs. Cheadle was informed that she could waive the sixty-day period for objections and receive a final decision. On August 15, 2005, Ms. Houston, as her mother's agent, executed a waiver of the right to object to the Recommended Decision.

On August 18, 2005, the Final Decision was issued, approving Mrs. Cheadle's claim for Part E benefits in the amount of $125,000.00. Mrs. Cheadle was informed that, before payment could be made, she needed to complete an enclosed Form EN-20. An accompanying letter from the DOL stated in part:

> [E]nclosed [is] the Acceptance of Payment form (EN-20), which is required before the Office of Workers' Compensation Programs can issue payment to you. You must complete the form in permanent ink and there can be no cross outs or other marks. Do not use white out or correction tape. Any alteration of the form will result in it being rendered unusable for purposes of issuing payment. If you make a mistake or need another form, please contact the district office handling your claim. You must submit the form with an original signature. . . . A second copy of the form is attached in case a mistake is made. Only one form needs to be returned. Please check with your financial institution before returning the form to us to verify **the routing number** and **your account number** so that your money arrives promptly and to the correct amount.

(Docket No. 16-4 at 2, bold in original).  Also enclosed were "Instructions for Completing EN-20," and those instructions, too, indicated that the form was to be completed in its entirety, and that any alterations or omissions would render the form "invalid."  (Docket No. 16-6).

On August 20, 2005, Ms. Houston completed and signed the form EN-20 as the authorized representative of her mother, Mrs. Cheadle.  In so doing, Ms. Houston accidently wrote the number "8" as the last digit of the bank's 9-digit routing number, and attempted to correct the mistake by writing the number "6" over the number "8" with an ink pen.  The next day, August 21, 2005, Mrs. Cheadle died.

On August 25, 2005, the Denver District Office wrote Mrs. Cheadle, advising her that another Form EN-20 needed to be completed "because of the **strike-over in the 9 digit routing number block of the EN-20**."  (Docket No. 16-8, bold in original).  Mrs. Cheadle was instructed to "fill out the form completely and accurately," and told "**do not to cross out anything, use Whiteout or make any errors on this form**."  (Id., bold in original).

The Denver District Office received a second Form EN-20 on September 1, 2005.  Like before, this form was dated August 20, 2005, and bore Ms. Houston's signature.  However, the new form did not contain the previous strike-over correction.

Approximately two weeks after submission of the new EN-20 form, the DOL's Office of the Solicitor rejected a Power of Attorney dated June 4, 2005, that Ms. Houston relied on in signing the EN-20 forms as agent for her mother.  It did so because the Notary Public's certificate of acknowledgment on the Power of Attorney did not appear to bear a seal.  Shortly thereafter, on September 23, 2005, Ms. Houston faxed the DOL a copy of the Power of Attorney with the seal visible.  This was found to be acceptable by the DOL on September 27, 2009.

3

Case 2:09-cv-00091   Document 29    Filed 10/14/11   Page 3 of 14 PageID #: 232

On September 29, 2005, the DOL made an electronic funds transfer in the amount of $125,000.00 to a joint account held by Mrs. Cheadle and Ms. Houston. However, because Mrs. Cheadle passed away weeks earlier, the account had become Ms. Houston's personal bank account. Ms. Houston divided the monies from the DOL between herself, her brother, and her sister.

Prior to receiving the $125,000.00, Ms. Houston did not tell the Government that her mother had died. She did, however, tell the Social Security Administration about her mother's death, as well as the administrators of the plans (including the Government) that provided retirement benefits to Mrs. Cheadle.

In her deposition in this case, Ms. Houston testified that she thought the $125,000.00 was properly a part of her mother's estate. In fact, after her mother died, but before she re-submitted the EN-20 form, Ms. Houston claims she spoke with Harry Sabine, her mother's estate attorney, and he allegedly told her to fill out the paperwork again and use the same date that she had used when she originally completed the form. (Docket Entry No. 16-5 at 13). Ms. Houston also testified that when Dennis Arata ("Mr. Arata") of the DOL called to inform her that the benefit was going to be approved, she told him that her mother was dying and in hospice care. However, Mr. Arata never told her that she would have to return the money if her mother died before receipt of the payment. (Id.).

Based on these events, the Government filed a five-count Complaint in this Court. In Counts I and II, the Government brings claims under the FCA, specifically, that Ms. Houston presented a false claim in violation of 31 U.S.C. 3729(a)(1)(A), and that she used a false statement to receive benefits in violation of 31 U.S.C. § 3729(a)(1)(B). In the remaining counts, the Government brings claims under the federal common law for conversion (Count III), payment by mistake of fact (Count

4

IV) and unjust enrichment (Count V).

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. LEGAL DISCUSSION

As noted, the Government seeks to recover the $125,000.00 paid to Ms. Houston under both statutory and federal common law. The Court will consider the arguments presented by the parties after a brief discussion of the EEOICPA as it pertains to this litigation.

Passed by Congress in 2000, the EEOICPA "established a program to compensate individuals with illnesses (e.g., cancer, beryllium poisoning) attributable to their exposure to radiation and other toxic substances (e.g., beryllium, silica) while working for" the Department of Energy. Harger v. Dep't of Labor. 569 F.3d 898, 901 (9th Cir. 2009). The EEOICPA also provides "for the lump-sum payment to survivors of persons who contracted cancer as a result of exposure to radiation during employment in the United States nuclear weapons program." Hayward v. Dep't of Labor, 536 F.3d 376, 377 (5th Cir. 2008).

With regard to survivor benefits, Section 7385s-3(a) of the EEOICPA sets forth the amounts

5

recoverable (from $125,000.00 to $175,000.00), and how those amounts are to be calculated. Subsection (c), in turn, sets forth how those payments are to be distributed by providing:

> (c) The amount under subsection (a) of this section shall be paid only as follows:
>
> > (1) If a covered spouse is alive at the time of payment such payment shall be made to such surviving spouse.
> >
> > (2) If there is no covered spouse described in paragraph (1), such payment shall be made in equal shares to all covered children who are alive at the time of payment.

42 U.S.C. § 7385s-3(c). For purposes of the foregoing provisions, a "covered child" is defined as "a child of the employee who, as of the employee's death (A) had not attained the age of 18 years; (B) had not attained the age of 23 years and was a full-time student who had been continuously enrolled as a full-time student in one or more educational institutions since attaining the age of 18 years; or (C) had been incapable of self-support." 42 U.S.C. § 7385(d)(2). Ms. Houston does not claim to be a "covered child" under the EEOICPA.[1]

## A. FCA Counts

The statutory claims in this case are brought under the provisions of the FCA which provides that "any person who – (a) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "(b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"[2] shall be liable to the Government for

---

[1] The Court does not know the status of Mrs. Cheadle's other two children, although no suggestion is made in the filings that either was a "covered child" as of their father's death within the meaning of the EEOICPA.

[2] Prior to the enactment of the Fraud Enforcement and Recovery Act of 2009, Publ L. No. 111-21, 123 Stat 1617, the language in clause (b) prohibited the knowing use of "a false record or statement *to get* a false or fraudulent claim paid" by the government. "The deletion of the words 'to get' likely responded to the Supreme Court's decision in Allison Engine Co., v. United States ex rel. Sanders, 553 U.S. 662, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008), holding that § 3729(a)(2) contained an intent requirement—and thus required that a subcontractor who submitted a false statement to a prime contractor must intend that the statement be used 'to get' the government to pay a claim." Chesbrough v. VPA, P.C., 2011 WL 3667648 at *9 n.2 (6th Cir. 2011). Whether this substituted language is retroactive

6

civil penalties "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. §§ 3729(a)(1)(A) & (B). Even though "no specific intent to defraud required," 31 U.S.C. § 3729(b), the Sixth Circuit has indicated that the FCA is essentially an "anti-fraud statute," and this remain so even though the FCA does not require proof of all the traditional elements of a fraud claim[.]" United States *x rel.* Bledsoe v. Cmty Heath Sys. Inc., 342 F.3d 634, 642 (6th Cir. 2003). "Congress may have had special reasons for liberalizing the level of intent needed to prove a FCA violation, but its unambiguous legislative intent was to combat fraud and, consequently, to hold civilly liable those persons who submit fraudulent claims." Id. (footnote omitted).

> To prevail on its FCA claim, the Government is required to establish the following elements:
>
> First, the defendant must have made a false statement or created a false record, and must have done so "with 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard of the truth or falsity of the information.'" . . . Second, the defendant must have submitted a claim for payment to the federal government. . . . Third, the defendant's false statement must have been made with the purpose of "getting a false or fraudulent claim 'paid or approved by the Government.' " . . . Finally, the defendant's false statement or record must have been material to the government's decision to make the payment sought in the defendant's claim.

United States *ex rel.* SNAPP, Inc. v. Ford Motor Co., 532 F.3d 496, 505 (6th Cir. 2008) (internal citation omitted). While the Court agrees with the Government that the summary judgment record shows Ms. Houston submitted a record or statement that was material to the Government's decision to make payment, a question of fact exists as to Ms. Houston's knowledge in doing so.

"The False Claims Act does not penalize all factually inaccurate statements, but only those statements made with knowledge of their falsity." United States ex rel. Yannacopoulos v. General

---

is an open question, id., but, as in Chesbrough, the Court need not decide the matter because Ms. Houston submitted the claim directly to the Government. Moreover, the Government assert that the Court need not decide the retroactivity issue because it claims it is entitled to summary judgment on its FCA claims, even under the prior language.

7

Dynamics, 2011 WL 3084932 at *11 (7th Cir. July 26, 2011). Thus, while "[a] defendant may be held liable under the FCA for 'knowingly' making or presenting a false claim, . . . the statute is not intended to 'punish honest mistakes or incorrect claims submitted through mere negligence.'" United States *ex rel.* Ubl v. IIF Data Solutions, 650 F.3d 445, ___ (4th Cir. 2011) (citation omitted); see also, United States v. Corinthian Colleges, 2011 WL 3524208 at *8 (9th Cir. Aug. 12, 2011) (citation omitted) ("'innocent mistakes, mere negligent misrepresentations and differences in interpretations' will not suffice to create liability"); United States v. Science Applications Int'l Corp., 626 F.3d 1257, 1275 (D.C. Cir. 2010)(even though "the FCA adopts a less exacting definition of scienter than common law fraud, 'innocent mistakes' and 'negligence' remain defenses under the Act").

In moving for summary judgment, the Government argues that Ms. Houston submitted two documents after her mother's death which "made or caused to be made a false statement or record: (1) the corrected EN-20 form, which bore an incorrect date, *i.e.*, a date prior to her mother's death, and (2) the Power of Attorney submitted on or about September 23, 2005, more than a month after her mother's death[.]" (Docket No. 15 at 18). The Government goes on to argue that "the defendant knowingly, or at the very least acted with reckless disregard in presented [sic] these false documents after her mother's death, in order to get a false or fraudulent claim paid or approved by the United States." Id.

Contrary to the Government's assertions, when the facts are construed in Ms. Houston's favor as they must be for present purposes, it cannot be said as a matter of law or fact that Ms. Houston knowingly or with reckless disregard submitted the corrected EN-20 form and the power of attorney "in order to get a false or fraudulent claim paid or approved by the United States." At

8

the time Ms. Houston submitted both the initial and corrected EN-20 forms on behalf of her mother, Mrs. Cheadle (1) had received a Recommended Decision which indicated that her claim for $125,000.00 was "accepted as compensable under Part E"; (2) had waived the right to object, so as to receive prompt payment; and (3) had received a Final Decision which indicated that the $125,000.00 was indeed hers upon completion of the EN-20 form. Such facts, which are undisputed, could have led Ms. Houston to believe that Mrs. Cheadle was at that point entitled to receive the $125,000.00 and/or that it would become part of her estate upon death, or at least a jury could so find. This possibility is supported by Ms. Houston's contention that, when Mr. Arata called, she told him that her mother was on her death bed, but Mr. Arata did not say that the payment would not be made (or would have to be returned) if her mother died before the funds were transferred to her account. Ms. Houston's action in splitting the money with her brother and sister also suggests that she viewed the EEOICPA payment as a part of her mother's estate.

Additionally, when Mrs. Cheadle died after the first EN-20 form was submitted, Ms. Houston claims she spoke with her the attorney for her mother's estate who told her that she should resubmit the EN-20 form using the same date as was on the first form. Such evidence, if accepted, could lead a reasonable jury to conclude that Ms. Houston was attempting, in good faith, to properly handle the affairs of a recently departed loved one.

As it turns out, Ms. Houston was wrong her in belief that the $125,000.00 could be kept as a part of the estate because the statute specifically mandates that payment to a covered spouse be made only if the "covered spouse is alive at the time of payment." 42 U.S.C. § 7385s-3(c). Nevertheless, the FCA is not intended to punish innocent mistakes, but instead is an anti-fraud statute designed to punish those who knowingly submit fraudulent claims. If the Government wants

9

to hold Ms. Houston liable for triple damages and civil penalties, it will have to do so by convincing a jury that Ms. Houston knowingly violated the FCA.

B. **Federal Common Law Counts**

In addition to its FCA claims, the Government seeks to recover the $125,000.00 under the federal common law claims of conversion, payment by mistake, and unjust enrichment.[3]

It is "presume[d] that Congress legislates against the established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles it will say so." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 758 (11th Cir. 2010). Thus, although "Congress need not 'affirmatively proscribe' the common-law doctrine at issue" . . . "courts may take it as a given that Congress has legislated with an expectation that the [federal common law] principle will apply except 'when a statutory purpose to the contrary is evident.'" United States v. Texas, 529, 534 (1993) (brackets in original, internal citations omitted).

The Court finds nothing in the EEOICPA that suggests Congress intended to displace the federal common law remedies the United States ordinarily possesses to recovery wrongfully paid monies, and the parties do not argue otherwise. Accordingly, the Court turns to the common law claims advanced by the Government.

---

[3]The Court notes that whether unjust enrichment is a stand-alone claim is subject to debate, at least under the laws of various states. See e.g., Boring v. Google, Inc., 362 Fed. Appx. 273, 282 (3rd Cir.. 2010) (declining to address decide, as district court held, that unjust enrichment is not a stand-stand alone tort under Pennsylvania law); In re TFT-LCD (Flat Panel) Antitrust Litigation, 2011 WL 4345435 (N.D. Ca. 2011 Sept. 15, 2011) ("California courts are split on the question of whether unjust enrichment is a viable cause of action under California law"). Whether that is also true as a matter of federal common law – "which may draw upon state law principles," Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 615 (6th Cir. 2002) – is also open to question. See, In re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 167 (E.D. Pa. 2009) (noting that complaint "does not reference any basis in law on which a claim for unjust enrichment might proceed" and that "[u]njust enrichment is not a catch-all claim existing within the narrow scope of federal common law"). However, "'whether unjust enrichment functions as an independent claim or is instead an effect that must be tethered to a distinct legal theory to warrant relief,' . . . '[u]nder both views, the effect of unjust enrichment is remedied with some form of restitution.'" McFadden v. Deutsche Bank. Nat'l Trust, 2011 WL 3606797 at *15 (E.D. Ca. Aug. 19, 2011) (citations omitted).

10

"Conversion involves an act of control or dominion over the property that seriously interferes with the owner's rights." United States v. Stockton, 788 F.3d 210, 215 (4th Cir. 1986) (collecting cases). "The notion that the act of dominion or appropriation is contrary to the wishes of the owner, or at least without clear permission from the owner, is inherent in the concept of conversion," but conversion "can also occur following the lawful entrustment of property to the defendant." Id. & fn. 5.

In this case, the undisputed evidence shows the Government is entitled to recover the $125,000.00 on a conversion theory. Ms. Houston has or had dominion and control over the monies, a control that was not authorized by statute or otherwise, and a control which is contrary to the wishes of the United States as evidenced by the filing of this lawsuit.

The Government is also entitled to a return of the monies under a theory of mistake of payment. "Under the common-law theory of payment by mistake, the government may 'recover money it mistakenly, erroneously, or illegally paid from a party that received the funds without right.'" United States v. Medica Rents Co. Ltd., 2008 WL 3876307 at *3 (5th Cir. 2008). "To prevail on a claim for payment by mistake (also known as payment by mistake-of-fact), the Government must show that the . . . program 'made ... payments under an erroneous belief which was material to the decision to pay.'" United States *ex rel.* Roberts v. Aging Care Home Health, Inc., 474 F.Supp. 2d 810, 818 (W.D. La. 2007) (citation omitted).

Here, the Government has shown through the summary judgment record that it wired funds to Mrs. Cheadle's and Ms. Houston's joint account, and that Ms. Houston unlawfully received those funds. This was a result of the Government's mistaken belief that Mrs. Cheadle was still alive when funds were wired, a belief that was material to the Government's decision because only living

11

spouses can receive payment under the EEOICPA.

Finally, the United States is entitled to recover on its unjust enrichment claim. "The elements of a federal common law claim of unjust enrichment are: (1) the Government had a reasonable expectation of payment; (2) [the defendant] should reasonably have expected to pay; or (3) society's reasonable expectations of person and property would be defeated by nonpayment.'" United States ex rel. Wall v. Circle Const., LLC, 700 F.Supp.2d 926, 939 (M.D.Tenn. 2010) (citations omitted). This theory is often used to recover government monies which are wrongfully obtained. See, e.g., id. (finding defendant "was unlawfully enriched by its receipt of contractual payments from the United States"); United States v. Applied Pharmacy Consultants, Inc., 182 F.3d 603, 609 (8th Cir. 1999) (United States could recover amount Medicare overpaid to supplier of goods under theory of unjust enrichment).

Here, when the Government ultimately learned that Mrs. Cheadle and died, and that her death occurred before the $125,000.00 payment under the EEOICPA, it had a reasonable expectation of repayment of that amount. Further, Ms. Houston should have reasonably expected to have to repay the amount when it was pointed out to her that payments under the EEOICPA are proper only to living spouses or qualified children.

In arriving at the conclusion that the Government is entitled to recover the $125,000.00 payment under one or more of its federal common law theories, the Court has considered the handful of underdeveloped arguments raised by Ms. Houston. She argues that it is "interesting to note that while apparently Congress decided that benefits under Part E would not pass to the estate of a surviving beneficiary . . . benefits under Part B of the [EEOICPA] were not treated in a similar fashion." (Docket No. 13 at 3). While that may be so, this argument only underscores what the

12

plain language of the statute makes clear: payments under Part E the EEOICPA shall only be paid to a covered spouse who "is alive at the time of payment," or to "covered children who are alive at the time of payment," situations that did not exist when payment was made in this case.

Ms. Houston also argues that "[w]hether the Defendant has been unjustly enriched is . . . an equitable consideration not acceptable to resolution by summary judgment." However, summary judgment is often granted on claims for equitable relief, including claims for unjust enrichment. See, FDIC v. Jeff Miller Stables, 573 F.3d 289, 298-99 (6th Cir. 2009) (affirming summary judgment in favor of FDIC on unjust enrichment claim in excess of $1.9 million, even though defendant disputed the figures relied upon by FDIC). Further, imposing a money judgment as a matter of law based upon undisputed facts is entirely proper where, as here, the amount in question is for a sum certain. See, Cedar Hill Hardware and Const. Supply, Inc. v. Ins. Corp. of Hannover, 563 F.3d 329, 355 (8th Cir. 2009) ("court's imposition of restitution in the present case was the assessment of a sum certain to prevent unjust enrichment" and "[t]his is unlike the jury's traditional role of resolving a factual dispute or quantifying a non-monetary harm").

Finally, and without any further elaboration, Ms. Houston claims that under 42 U.S.C. § 7385j-2, the "government's right to recover an incorrect payment is prohibited when the incorrect payment has been made to an individual who is without fault," and "[w]hether the Defendant's actions fall under the waiver provision of [§] 7385j-2 can only be determined by the tier of facts hearing the proof in this case." (Docket No. 18 at 4). However, but for Ms. Houston submitting the second form which represented that it was signed at a time when her mother was alive, the payment would not have been made and, in this sense, Ms. Houston was unquestionably at fault, even though she may not have had a fraudulent intent.

13

This case presents a unique set of unfortunate circumstances because, as Ms. Houston points out, had there not been an error made in the first EN-20 form, this dispute might not have arisen. However, the facts are what they are and the law is clear. The Court has no choice but to conclude that the Government is entitled to a return of the $125,000.00.

## IV. CONCLUSION

On the basis of the foregoing, the Court will grant the Government's Motion for Summary Judgment (Docket No. 15) insofar as the United States of America seeks to recover the $125,000.00 received by Ms. Houston under the theories of conversion, payment by mistake of fact, and/or unjust enrichment as set forth in Counts III through V of its Complaint. The Court will deny the Motion insofar as the Government recover those funds together with trebled damages and civil penalties under the FCA.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE